UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

AERO UNION CORPORATION,  )
                          )
            Plaintiff,    )
    v.                    )          1:11-cv-00484-JAW
                          )
AIRCRAFT DECONSTRUCTORS   )
INTERNATIONAL LLC, et al.,)
                          )
            Defendants.   )

**ORDER**

In this dispute over payment for work allegedly performed on a P-3 aircraft, the Defendants have asserted immunity under the Foreign Sovereign Immunities Act (FSIA) and, over the Defendants' objections, the Plaintiffs have sought limited discovery to determine whether the transaction fits within the commercial activity exception to the FSIA, whether the Defendants have waived sovereign immunity, and whether the Aircraft is, or is intended to be, used in connection with a military activity. The Court allows limited discovery on this issue. The Court also issues a confidentiality order that will provide for the unsealing of most of the docket entries in this case, subject to limited redaction. Finally, the Court strikes the Plaintiff's sur-reply as not allowed under the District's Local Rules.

# I.   STATEMENT OF FACTS

## A.   Factual Background

Pursuant to its Reactivation Program, the United States Government transferred twelve of its retired/surplus Navy P-3 Orion aircraft to the Government

of Brazil.  Brazil, as owner of the aircraft, entered into a contract with European Aerospace Defence Space – Construcciones Aeronaúticas Sociedad Anónima (EADS-CASA) to extract the twelve aircraft from their location at a United States Air Force base in Arizona and to ferry flight, retrofit, and modernize the P-3 airplanes.  In 2006, EADS-CASA entered into a confidential written contract with Aero Union to extract and make ready the P-3 aircraft for ferry flight.  The contract also provided that Aero Union would perform structural repairs and overhaul on three of the airplanes, pursuant to the modernization portion of EADS-CASA's contract with Brazil.  As of August 2011, all but one P-3 airplane had been extracted and delivered by ferry flight.  Aero Union was nearing completion on the structural repairs of the one remaining P-3 aircraft (the Aircraft) when it encountered unrelated financial problems.

In response, Aero Union and EADS-CASA amended their contract to provide for the completion of repairs on the remaining airplane.  The modifying term sheet provided that a third party, Aircraft Deconstructors International (ADI), would finish the repairs and that EADS-CASA would pay third parties directly for completion expenses and the remaining amounts due Aero Union under the original contract.  EADS-CASA would then be entitled to reimbursement/offset of agreed-upon costs incurred by EADS-CASA to complete the aircraft repairs as well as a warranty reserve of $200,000.

On November 20, 2011, the repairs were complete and preparations were being made to ferry flight the Aircraft to EADS-CASA's facilities in Spain.  Among

the preparations were cooperative attempts by Brazil, EADS-CASA, and Aero Union to secure diplomatic clearance from the United States Department of State and a final export license from the United States Customs and Border Patrol to export the Aircraft from the United States.  Aero Union had successfully secured the necessary export licenses for the eleven previous P-3 aircraft bought by Brazil.

While processing the export license for the remaining P-3 airplane, Aero Union discovered that employees of ADI had (a) tried to file a fraudulent application to export the Aircraft purportedly on behalf of Aero Union (without Aero Union's authorization); (b) forged and/or falsified documents by pretending to be Aero Union representatives; and (c) unlawfully filed those falsified documents with the United States Department of State and with the United States Customs and Border Patrol. Aero Union had not authorized such filing and immediately stopped ADI's process of obtaining the export license.  Aero Union then continued processing the export license in accordance with past practice and the terms of its contract with EADS-CASA.

Meanwhile, EADS-CASA failed to provide payments to Aero Union when due. At a meeting with Aero Union on December 14, 2011, EADS-CASA agreed to pay $1,593,523 as the gross amount it owed Aero Union, subject to any allowable offset and reserve.  EADS-CASA also agreed to make no attempt to remove the Aircraft from Aero Union's facilities in California until all amounts were paid in full under the contract between EADS-CASA and Aero Union, subject to any allowable

warranty reserve.  On December 20, 2011, however, Aero Union learned that the Aircraft had left California and was in Bangor, Maine awaiting export to Spain.

### B.    Procedural Background

Aero Union filed a sealed complaint on December 22, 2011 against EADS-CASA, Aircraft Deconstructors International, and the Brazilian Comando da Aeronáutica (Brazilian Air Command), an aerospace branch of Brazil's armed forces.  *Verified Compl. of Pl. Aero Union Corp.* (ECF No. 2).  Aero Union claimed that EADS-CASA breached the amended contract and owes Aero Union $1,593,523 (subject to a not yet agreed-upon cost offset and warranty reserve).  Aero Union has liens against the Aircraft for work done under the contract between Aero Union and EADS-CASA.  According to Aero Union, the attempted removal of the Aircraft was done clandestinely, in direct contravention of the amended contract and the course of dealings of the parties and for the purpose of evading a lawful and fully acknowledged debt and wrongfully divesting Aero Union of its lien rights.

That same day, Aero Union filed a sealed *ex parte* motion for a temporary restraining order to enjoin the Aircraft from leaving Bangor, Maine and for attachment of the Aircraft.  Ex Parte *Mot. for TRO and Attach. of Pl. Aero Union Corp.* (ECF No. 3).  The Court denied the motion on December 23, 2011.  *Order on Mot. for TRO* (ECF No. 9) at 1-6.  On  January 13, 2012, Aero Union filed under seal an amended complaint and renewed motion for a temporary restraining order and attachment.  *Am. Verified Compl. of Pl. Aero Union Corp.* (ECF No. 10); *Sealed Mot. for TRO, Prelim. Inj., and* Ex Parte *Attach. of Pl. Aero Union Corp.* (ECF No. 11).

4

On January 13, 2012, the Court granted Aero Union's second motion for a temporary restraining order and attachment of the Aircraft. *Order on Second Mot. for TRO and Attach.* (ECF No. 13) at 5-6 (*Order on Second TRO Mot.*). EADS-CASA moved to vacate the TRO and attachment on January 17, 2012 or, in the alternative, proposed the substitution of a bond as security for the aircraft. *Mot. of Def. EADS-CASA to Vacate Jan. 13, 2012 Order on Mot. for TRO and for Attach. or, in the Alternative, Mot. to Modify Jan. 13, 2012 Order in part to Substitute Bond and Dissolve TRO and Attach.* (ECF No. 15) (*Def.'s Mot. to Vacate*). Upon receiving from EADS-CASA a surety bond of $1,561,836.36 on January 20, 2012, the Court vacated the January 13th order and dissolved the attachment. *Order Vacating TRO and Dissolving Attach.* (ECF No. 32).

Since the Court's last order, Aero Union responded and opposed EADS-CASA's motion to vacate. *Pl. Aero Union Corp.'s Objection to Def. EADS-CASA's Mot. to Vacate or Modify Jan. 13, 2012* (ECF No. 33) (*Pl.'s Vacate Objection*). EADS-CASA filed a reply, requesting that the January 13, 2012 Order be vacated in its entirety, or alternatively, that the Court reduce the bond to no more than $50,000. *Reply Mem. of Def. EADS-CASA in Further Supp. of its Mot. to Vacate or Modify Jan. 13, 2012 Order* (ECF No. 38) (*Def.'s Vacate Reply*).

In addition, Aero Union filed three further motions. On February 10, 2012, Aero Union filed a Motion for Continued Sealing and an accompanying proposed Confidentiality Order. *Mot. for Continued Sealing and Confidentiality Order of Pl. Aero Union Corp.* (ECF No. 35) (*Pl.'s Mot. to Seal*). EADS-CASA responded,

5

submitting its own proposed Confidentiality Order on February 14, 2012. *EADS-CASA's Mem. in Resp. to Aero Union's Mot. for Continued Sealing and Confidentiality Agreement* (ECF No. 37) (*Def.'s Resp. to Seal*).

On March 5, 2012, Aero Union filed a motion for limited discovery. *Pl. Aero Union Corp.'s Mot. for Limited Disc.* (ECF No. 40) (*Pl.'s Disc. Mot.*). EADS-CASA filed its opposition on March 15, 2012, *Mem. of Def. EADS-CASA in Opp'n to Aero Union's Mot. for Limited Disc.* (ECF No. 46) (*Def.'s Disc. Opp'n*), and on March 29, 2012, Aero Union replied, *Pl. Aero Union Corp.'s Reply in Supp. of its Mot. for Limited Disc.* (ECF No. 48) (*Pl.'s Disc. Reply*).

Lastly,[1] on March 8, 2012, Aero Union filed a Motion for Leave to File Surreply to CASA's motion to vacate the January 13th Order. *Pl. Aero Union Corp.'s Mot. for Leave to File Surreply to Def. EADS-CASA's Mot. to Vacate or Modify Court's Jan. 13, 2012 Order* (ECF No. 43) (*Pl.'s Surreply Mot.*). EADS-CASA responded in opposition on March 15, 2012. *Mem. of Def. EADS-CASA in Opp'n to Aero Union's Mot. for Leave to File a Surreply* (ECF No. 45) (*Def.'s Surreply Opp'n*). Aero Union replied on March 20, 2012. *Pl. Aero Union Corp.'s Reply Mem. in Supp. of Mot. for Leave to File Surreply* (ECF No. 47) (*Pl.'s Surreply Reply*).

---

[1]     On June 1, 2012, Aero Union moved for an entry of default as to Defendant Aircraft Deconstructors International LLC for failure to plead or otherwise defend. *Pl.'s Req. to Clerk for Entry of Default Pursuant to F. R. Civ. P. 55(a)* (ECF No. 50). The Court granted the motion on June 4, 2012. *Order* (ECF No. 51).

## II.   DISCUSSION

### A.   Plaintiff's Motion to Continue Sealing

Local Rule 7A states that "[t]o obtain an order allowing one or more documents or pleadings to be sealed, a party shall electronically file . . . a motion to seal together with the separate document(s) or pleading(s) sought to be sealed.  The motion shall propose specific findings as to the need for sealing and the duration the document(s) should be sealed.  The motion shall include a statement whether there is agreement of the parties to the sealing."  LOCAL RULE 7A(a).  "In making specific findings as to the need for sealing and the duration the document(s) shall be sealed, the Court may incorporate by reference the proposed findings in the motion to seal."  LOCAL RULE 7A(c).

Citing Local Rule 7A, Aero Union moved for continued sealing of its prior filings under seal, with leave to file public redacted versions.  *Pl.'s Mot. to Seal* at 1.  In its motion, Aero Union proposed specific findings supporting the need for continued sealing, saying continued sealing is necessary because the terms of the Contract and the actions of the parties with respect to the Contract are disclosed in multiple filings under seal, EADS-CASA has not waived the confidentiality terms of the Contract, and Aero Union does not know what information EADS-CASA believes must be protected from disclosure under the Contract, under EADS-CASA's prime contract with Brazil, under the foreign laws that EADS-CASA references in the Contract, or under any other agreements between EADS-CASA and third parties.  *Pl.'s Mot. to Seal* at 4-5.  Aero Union proposes that the seal continue either

7

without limit, with leave to file public redacted versions of the documents filed under seal, or until EADS-CASA and any other protected parties submit written waivers of confidentiality. *Pl.'s Mot. to Seal* at 5. According to Aero Union, Aero Union and EADS-CASA agree in the form of the Contract and agree to meet and confer regarding matter that can be disclosed by filing public redacted versions of the documents now filed under seal. *Pl.'s Mot. to Seal* at 5. Aero Union included a proposed confidentiality order. *Pl.'s Mot. to Seal* Attach 1, *Pl.'s Confidentiality Order*.

EADS-CASA says that it "agrees" that the Court should lift its earlier Sealing Order "because confidential proprietary information can be handled in the same manner as litigants traditionally treat confidential information, and thus the sealing [of] the entirety of the case is unnecessary." *Defs.' Resp. to Seal* at 1. EADS-CASA suggests a schedule by which it would advise Aero Union of potential confidentiality issues found in Aero Union's previous submissions made under seal, EADS-CASA and Aero Union would meet and confer to resolve any confidentiality issues, and the parties would then submit to the Court any further redacted documents so that such documents would be made publicly available in lieu of documents previously filed under seal. *Defs.' Resp. to Seal* at 2. Following those steps by the parties, the Court would lift the December 23rd Sealing Order. *Defs.' Resp. to Seal* at 2. Although EADS-CASA says it is willing to agree to a confidentiality order substantially similar to Aero Union's suggestion, it submitted its own proposed version of the confidentiality order, which it says "recognizes

8

EADS-CASA's special appearance" and "reflect[s] the actual status of this action." *Defs.' Resp. to Seal* at 1-2.

"[T]here is a strong common law presumption favoring public access to judicial proceedings and records." *In re Salem Suede, Inc.*, 268 F.3d 42, 45 (1st Cir. 2001). Although Aero Union proposes that the seal continue, with leave to file public redacted versions of the documents filed under seal, both parties agree that maintaining an entirely secret docket in this publicly-filed case is unnecessary. The confidentiality concerns of Aero Union and EADS-CASA can be addressed through the Court's standard procedure of making publicly available redacted versions of the documents filed under seal because the parties have agreed to meet and confer regarding matters that can be disclosed in this way.

Local Rule 26(d) provides that "[a] party by motion or with the agreement of all parties may submit to the Court a proposed order governing the production and use of confidential documents and information in the pending action. The proposed order shall conform to the Form Confidentiality Order set forth in Appendix II to these Local Rules." D. ME. LOCAL RULE 26(d). The parties do not agree on certain specific terms of a confidentiality order, although they both seek such an order. Aero Union's proposal conforms to the Local Rules' Form Confidentiality Order; EADS-CASA's contains modifications. EADS-CASA's proposed modifications include an introductory caveat that EADS-CASA is entering a special appearance

without submitting to the personal jurisdiction of this Court and minor word changes to the form Order.[2]

Local Rule 26(d) directs that "[a]ny proposed modification to the Form Confidentiality Order shall be identified with a short statement of the reason for each modification." *Id.* Although EADS-CASA provided no such short statement, the Court reviewed the parties' drafts and has determined the terms appropriate to protect the respective interests of the parties, the public, and the Court. The Court accepts EADS-CASA's proposed modifications and is issuing a Confidentiality Order in the form EADS-CASA has proposed.

Accordingly, the Court orders that within thirty days of the date of this Order: (1) EADS-CASA review all prior filings by Aero Union and identify for Aero Union those portions that constitute confidential and proprietary information

---

[2]    EADS-CASA's careful stipulation in the proposed Confidentiality Order that it has "appeared specially in the above-captioned action without submitting to the personal jurisdiction of this Court for the limited purposes of vacating this Court's January 13, 2012 Order" does no harm but also does no good. *Defs.' Resp. to Seal* Attach. 1, *Def.'s Confidentiality Order* at 1. As Wright and Miller observe:

> [T]echnical distinctions between general and special appearances have been abolished and the rulemakers wisely concluded that no end is accomplished by retaining those terms in federal practice.

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1344 (3d ed. 2004). Federal Rule of Civil Procedure 12 abolished the distinction between general and special appearances when the Federal Rules were adopted in 1938. *See* FED. R. CIV. P. 12; *Wright v. Yackley*, 459 F.2d 287, 291 (9th Cir. 1972) ("Rule 12 of the Federal Rules of Civil Procedure has abolished the formal distinction between general and special appearances"); *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 204 (6th Cir. 1967) ("[t]here is no longer any necessity for appearing specially")); *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 874 (3d Cir. 1944) ("Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances"). At the same time, "the joining of defenses in a motion creates no waiver." *W.H. Elliott & Sons Co. v. Nuodex Prods. Co.*, 243 F.2d 116, 118 (1st Cir. 1957); *see also Davenport*, 386 F.2d at 204 ("all objections to jurisdiction, venue and process . . . may be set up in a motion or answer to the merits without waiving any of them"). Nevertheless, in an effort to protect their clients' position that this Court is without jurisdiction, EADS-CASA's attorneys are understandably anxious to make it plain that EADS-CASA has not submitted to the jurisdiction of this Court. Though unnecessary, to allay their fears, the Court has approved their submitted language.

necessitating redaction; (2) EADS-CASA and Aero Union confer regarding any outstanding confidentiality issues; and (3) the parties file redacted versions of any documents currently under seal.  After the Court is satisfied that these procedures have been undertaken, it will lift the Sealing Order.[3]  The Court adopts the Confidentiality Order attached to this Order and directs the Clerk to file it on the docket.

### B.   Plaintiff's Motion for Limited Discovery

Aero Union has moved for limited discovery, which it says is relevant to EADS-CASA's pending motion to vacate or modify the Court's January 13th Order. According to Aero Union, resolution of that motion requires examination of the documents underlying the purchase of the Aircraft by the Brazilian Comando da Aeronáutica (Brazil Air Command), documents related to Brazil Air Command's retention of EADS-CASA, and documents related to the retention and payment of all contractors. *Pl.'s Disc. Mot.* at 1-2.  To determine the extent of the Defendants' immunity from prejudgment attachment, Aero Union reasons that limited discovery is necessary to explore possible waivers of sovereign immunity and the facts underlying the asserted immunity. *Id.* at 3-4.

In its opposition to Aero Union's motion for limited discovery, EADS-CASA argues that because the request is untimely and the Aircraft is immune from attachment, no discovery should be permitted. *Def.'s Disc. Opp'n* at 2.  First, it says

---

[3]      Having reviewed this Order and its prior Orders, the Court is aware of no proprietary information that would be revealed by their full disclosure.  However, to allow the parties to weigh in on this issue, the Court will continue to seal its Orders for ten days following the docketing of this Order.  If none of the parties makes a timely objection, the Orders will be unsealed.

that the request is untimely because EADS-CASA's Motion to Vacate was filed on January 17, 2012 and fully briefed by February 21, 2012 and Aero Union has provided no reason for its waiting until March 5, 2012 to ask for limited discovery in the matter.  *Id.*  EADS-CASA maintains that "allowing discovery on the issue of immunity now . . . would be an injustice to the diligence demonstrated by EADS-CASA and require EADS-CASA to incur additional expenses."  *Id.* at 3.  It also takes issue with the timeliness of Aero Union's "implausible theory" that the Aircraft was not in military service during its refurbishment, saying "Aero Union should not be permitted to take discovery on any untimely and frivolous argument first raised in its [proposed] surreply."  *Id.*  Second, EADS-CASA contends that, even if the discovery request had been timely, the Court should not permit discovery because the Aircraft is immune from attachment under the Foreign Sovereign Immunities Act (FSIA), to which there are no statutory exceptions.  *Id.* at 3-4.

Aero Union replies that EADS-CASA's argument—that Aero Union had not diligently pursued discovery and the request was untimely—"ignores the history of these proceedings."  *Pl.'s Disc. Reply* at 2.  Aero Union explains that because "[t]hese proceedings began with a motion for emergency relief[,] . . . the level of 'diligence' that CASA retroactively seeks to impose . . . was not feasible."  *Id.*  It points out that in its first opportunity for briefing, Aero Union requested discovery, but "CASA's balking has . . . prolonged this litigation and delayed the presentation of pertinent facts."  *Id.* at 2-3.  Aero Union says the cases cited by EADS-CASA on the issue of timeliness and on the question of the relevancy of discovery to immunity

12

issues are distinguishable.  *Id.* at 3-6.  Arguing that EADS-CASA would not be prejudiced by limited discovery, Aero Union maintains that "[g]iven the materiality of the documents requested and the limited burden it would place on Defendants, limited discovery would be in the interest of justice."  *Id.* at 4.  As to the sovereign immunity claim raised by EADS-CASA, Aero Union contends that because EADS-CASA is not a foreign sovereign it lacks standing to object to discovery on that basis.  According to Aero Union, EADS-CASA's sovereign immunity arguments "merely highlight[] the need for discovery."  *Id.* at 5.  It argues that "[t]he very reason discovery is appropriate is to determine [] whether the Aircraft is an attachable asset and whether the exceptions to sovereign immunity apply."  *Id.* at 5.

### 1.    Timeliness of Discovery Request

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  FED. R. CIV. P. 26(b)(1).  "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."  FED. R. CIV. P. 26(d)(1).  Earlier discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction."  FED. R. CIV. P. 26(d) advisory committee's note on 1993 amendments.  Here, where the discovery sought is relevant to both a

preliminary injunction and personal jurisdiction, entertaining Aero Union's discovery request is proper.

### 2.     Jurisdiction under the Foreign Sovereign Immunities Act

By invoking the FSIA, EADS-CASA challenges the Court's jurisdiction in its order of attachment of the Aircraft.[4]   The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).   A district court "lacks both statutory subject matter jurisdiction and personal jurisdiction" if none of the exceptions to sovereign immunity set forth in the FSIA applies.   *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 485 n.5 (1983).   "The FSIA makes the statutory aspect of personal jurisdiction simple: subject matter jurisdiction plus service of process equals personal jurisdiction."   *Semtek Int'l Inc. v. Info. Satellite*

---

[4]     Aero Union questions EADS-CASA's standing to raise the jurisdictional defense of sovereign immunity on behalf of the Brazilian Air Command.   Although "[p]arties other than a foreign sovereign ordinarily lack standing to raise the defense of sovereign immunity," *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1290 (11th Cir. 1999), the Court finds persuasive the Second Circuit's reasoning in the FSIA context:

> To the extent that a court has the power, or even duty, to consider a question *sua sponte,* it is hardly necessary to speak of "third-party standing." If a court may consider an issue on its own motion, it does not matter what triggers the court's inquiry.   The court may consider the issue once it is suggested by *any* party—or, for that matter, non-party—even if there is no reason to confer a special right of "third-party standing" on that party.   In any event, the general rule against third-party standing is a "judicially self-imposed" and "prudential" limitation, rather than a constitutional one.   As such, it must yield to a contrary statute.   That is this case. [T]he FSIA, by its terms, authorizes consideration of sovereign immunity from both jurisdiction and execution even in the absence of an appearance by the sovereign.

*Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 292-93 (2d Cir. 2011); *see also Walker Int'l Holdings Ltd. v. Republic of Congo,* 395 F.3d 229, 233 (5th Cir. 2004) ("the very language of the FSIA makes clear that the [sovereign's] presence is irrelevant").

*Sys.*, No. 09-10183-RWZ, 2012 WL 831475, at *4 (D. Mass. Mar. 9, 2012) (quoting *Seetransport Wiking Trader v. Navimpex*, 989 F.2d 572, 579 (2d Cir. 1993)).

### a.  Overview of the FSIA

Under the FSIA, "a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007); *see also* 28 U.S.C. § 1604.  Similarly, "the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter."  28 U.S.C. § 1609.

Section 1610, the commercial activity exception, reads "property of a foreign state, . . . used for a commercial activity in the United States, shall not be immune from attachment prior to entry of judgment in any action brought in a court of the United States . . . if (1) the foreign state has explicitly waived its immunity from attachment prior to judgment . . . and (2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction."  28 U.S.C. §1610(d).[5]

---

[5]  "Under the exceptions listed in §§ 1610 and 1611, property owned by a foreign state's instrumentalities is generally more amenable to attachment than property owned by the foreign state itself."  *Rubin v. the Islamic Republic of Iran*, 637 F.3d 783, 794 (7th Cir. 2011)), *as corrected* (Apr. 1, 2011), *cert. denied,* 11-431, 2012 WL 2368717 (June 25, 2012).  Whether the Brazilian Air Command is a foreign state or an agency or instrumentality of a foreign state under the FSIA could be "critical."  *See Ministry of Defense and Support for Armed Forces of Islamic Republic of Iran v. Elahi*, 546 U.S. 450, 452 (2006) ("The Act, as it applies to the 'property in the United States of a *foreign state*,' § 1610(a) (emphasis added), does *not* contain the 'engaged in commercial activity' exception . . . .  That exception applies only where the property at issue is property of an '*agency or instrumentality'* of a foreign state.  The difference is critical.") (internal citation omitted).  Here it is likely that the Brazilian Air Command would qualify for foreign state status under the FSIA.  *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (1994) (applying a functional approach to the question of whether the Bolivian Air Force was a foreign state or an agency or instrumentality for purposes of the FSIA's service of process provision and holding that "armed

If the property falls within the commercial activity exception and the foreign state has waived immunity, it could recover immunity from attachment if the aircraft qualifies as military property.   Excepted from the commercial activity exception is property used or intended to be used for military activity.  Section 1611 provides that:

> Notwithstanding the provisions of section 1610, . . . the property of a foreign state shall be immune from attachment and from execution, if—
>
> . . . . .
>
> (2) the property is, or is intended to be, used in connection with a military activity and
>
> (A) is of a military character, or
>
> (B) is under the control of a military authority or defense agency.

28 U.S.C. § 1611(b).

### b.    Application of the FSIA[6]

According to the Defendants, the aircraft is immune from attachment under § 1611 of the FSIA because it is, or is intended to be, used in connection with a military activity.  *Def.'s Disc. Opp'n* at 3.  Aero Union says that it needs to conduct limited discovery to determine certain "factual prerequisites" because the FSIA's

---

forces are as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state").

[6]    Aero Union argues that the FSIA is not applicable.  Instead, Aero Union says that the Cape Town Treaty, comprised of the Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment, applies.  *Pl.'s Disc. Mot.* at 2-3.  Neither party has fully briefed the issue of which law controls, but application of the Cape Town Treaty—like immunity under the FSIA— appears to depend upon determining whether the aircraft was military in nature and whether immunity had been waived.

applicability depends on "the nature of the property or the transaction at issue or the existence of a waiver." *Pl.'s Disc. Mot.* at 3.

With some misgivings, the Court agrees with Aero Union. The Court begins with a presumption of immunity for the Brazilian Air Command. *See Permanent Mission of India*, 551 U.S. at 197. As a predicate for the applicability of the FSIA, Aero Union must first demonstrate that the Aircraft is not immune from attachment by way of falling within the commercial activity exception. This will require additional discovery relating to the contracts and relationships of the parties in order to determine whether Brazil has explicitly or implicitly waived its immunity from attachment. The second question is the Aircraft's present or future military purpose. If the Aircraft is, or is intended to be, used in connection with a military activity and is of a military character or under the control of a military authority, the Aircraft is again immune from attachment.[7]

The Court is mindful that one of the purposes of the FSIA is "to protect foreign sovereigns from the burdens of litigation, including the cost and aggravation of discovery." *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 795 (7th Cir. 2011), *as corrected* (Apr. 1, 2011), *cert. denied,* 11-431, 2012 WL 2368717 (June 25, 2012). There is a "tension between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Arriba Ltd. v. Petroleos*

---

[7]     According to an affidavit by Daniel Martinez, which EADS-CASA submitted with its Motion to Vacate, the Brazilian Air Command hired EADS-CASA to update the Aircraft and eleven others "for military use by the Brazil Air Command, as submarine hunters." *Decl. of Daniel M. Martinez in Supp. of Mot. of Def. EADS-CASA* (ECF No. 16) at 2.

*Mexicanos,* 962 F.2d 528, 534 (5th Cir. 1992).  The First Circuit has not addressed discovery in FSIA attachment proceedings, but the Second, Fifth, Seventh, and Ninth have agreed that the "the court must proceed narrowly, in a manner that respects the statutory presumption of immunity and focuses on the specific property alleged to be exempt." *Rubin*, 637 F.3d at 796.  "Discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Id.* (quoting *EM Ltd. v. Republic of Argentina,* 473 F.3d 463, 486 (2d Cir. 2007)); *see also Conn. Bank of Commerce v. Republic of Congo,* 309 F.3d 240, 260 n. 10 (5th Cir. 2002) (quoting *Arriba Ltd.,* 962 F.2d at 534); *Af–Cap, Inc. v. Chevron Overseas (Congo) Ltd.,* 475 F.3d 1080, 1095-96 (9th Cir. 2007).

Aero Union seeks an order from the Court permitting discovery limited to documents relevant to the determination of the Aircraft's immunity status.  The Court finds that narrow scope of discovery is permissible because it focuses on verifying specific facts crucial to the determination of immunity while maintaining respect for the statutory presumption of immunity.  The Court orders that discovery be conducted on the narrow issue of the Aircraft's immunity from attachment.

With this said, the Court contemplates that Aero Union will conduct this discovery expeditiously and that the parties will cooperate in the resolution of any discovery issues.  Furthermore, the Court will not allow Aero Union to engage in a fishing expedition for documents.  Thus, the Court declines to allow Aero Union to obtain evidence of draft agreements or to proceed with its general request for "[a]ny other writings describing or relating to the Aircraft or relating to CASA's

allegations in support of its Motion." Aero Union has not made the case for the need for draft documents or for its "contention-style" demand for unspecified documents. To keep this case moving to fruition, the Court ORDERS Aero Union to file a status report every thirty days as to its efforts to conduct the limited discovery that the Court has ordered.

### C.   Plaintiff's Motion for Leave to File a Surreply

Lastly, Aero Union has moved for leave to file a surreply to EADS-CASA's motion to vacate or modify the Court's January 13, 2012 Order. In its motion, Aero Union maintains that a surreply is necessary to ensure that Aero Union has the opportunity to address arguments that EADS-CASA raised for the first time in its reply memorandum. *Pl.'s Surreply Mot.* at 1. Specifically, Aero Union says that EADS-CASA argues for the first time in its reply that (1) Aero Union has no contractual or statutory lien rights, (2) the Cape Town Treaty does not apply because the airplane was "used in military services," and (3) an attachment or temporary restraining order regarding Aero Union's equipment was not appropriate. *Id.* at 2 (internal punctuation omitted). Aero Union asks for leave to file a surreply to respond to these arguments. *Id.* at 3. Alternatively, Aero Union requests that "the new arguments and matter in CASA's Motion be disregarded." *Id.* Along with its motion, Aero Union filed its proposed surreply. *Pl. Aero Union Corp.'s Surreply Mem. in Opp'n to Mot. to Vacate or Modify Jan. 13, 2012 Order* (ECF No. 43 Attach. 1 *Redacted Public Version*); (ECF No. 44).

EADS-CASA objects to Aero Union's filing a surreply because it says the matters EADS-CASA addressed in its reply were not new but were instead replies to arguments raised by Aero Union in its response. *Def.'s Surreply Opp'n* at 2-3. EADS-CASA suggests that, in addition to denying Aero Union's motion for leave to file a surreply brief and rejecting Aero Union's request for disregarding arguments raised in EADS-CASA's reply, the Court should strike the proposed surreply memorandum because "[t]o permit the proposed surreply to accompany Aero Union's request for leave is to enable the requesting party to accomplish its goal of placing papers before the Court." *Id.* at 3-4.

Neither the Federal Rules nor the Local Rules permits a party to file a surreply to the moving party's reply. Local Rule 7 instead reflects the Court's need for finality and only allows parties to file a motion, a response, and a reply "strictly confined to replying to new matter raised in the objection or opposing memorandum." D. ME. LOC. R. 7. The Court therefore grants leave to file a surreply only in rare instances. "A surreply is appropriate where a party has not had the opportunity to contest matters introduced for the first time in the opposing party's reply." *Animal Welfare Inst. v. Martin*, 588 F. Supp. 2d 70, 81 (D. Me. 2008). However, "[t]he matter must be truly new." *Id.* "Absent highly unusual circumstances, sur-replies are not favored." *In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F. Supp. 2d 74, 78 (D. Me. 2011).

Here the Court agrees with EADS-CASA that the arguments with which Aero Union takes issue are not truly new. In its original motion to vacate, EADS-

20

CASA argued that Aero Union's lien-based claims were unlikely to succeed, explaining that the California repair person lien claim was dependent on possession, which Aero Union had voluntarily transferred to EADS-CASA, and the California aircraft repair lien required that the lien be capable of recordation with the Federal Aviation Administration, which was not possible in this case because the P-3 airplane was foreign-owned and not registered in the United States. *Def.'s Mot. to Vacate* at 4.

As for Aero Union's contention that EADS-CASA disputed applicability of the Cape Town Treaty for the first time in its reply, that is true. But EADS-CASA's argument that the Cape Town Treaty does not apply by way of the aircraft being used in military services was in response to Aero Union's own argument—raised for the first time in its opposition to the motion to vacate—that the Cape Town Treaty controlled. *See Def.'s Vacate Reply* at 5-6; *Pl.'s Vacate Objection* at 8-14. This comports with Local Rule 7; in its reply, EADS-CASA confined itself to "replying to new matter raised in the objection or opposing memorandum." Similarly, it was Aero Union in its opposition to the motion to vacate that first raised the issue of equipment belonging to Aero Union being onboard the aircraft. *Pl.'s Vacate Objection* at 15-16. Again, EADS-CASA merely responded to this argument in its reply. *Def.'s Vacate Reply* at 6-7.

Because the arguments raised in its reply are in response to Aero Union's own arguments in opposition, none of EADS-CASA's reply arguments is truly new. As Aero Union itself initiated all three, it has had ample opportunity to contest the

matters at issue.  A surreply is not appropriate.   The Court denies Aero Union's motion for leave to file a surreply and strikes Aero Union's proposed surreply from the docket.

### D.    Other Pending Motions

There remain certain other motions pending before the Court: (1) Aero Union's January 13, 2012 Motion for Preliminary Injunction (ECF No. 11); (2) EADS-CASA's January 17, 2012 Motion to Vacate or Modify the January 13, 2012 Order and to Substitute a Bond and Dissolve the TRO and Attachment (ECF No. 15).  The Court addressed the latter motion in its Preliminary Order on Motion to Vacate TRO and to Dissolve Attachment dated January 18, 2012 (ECF No. 24) and its subsequent Order Vacating TRO and Dissolving Attachment dated January 20, 2012 (ECF No. 32).   To the extent there is any lingering confusion, the Court GRANTS EADS-CASA's Motion to Vacate the January 13, 2012 Order and to Substitute a Bond and to Dissolve the TRO and Attachment (ECF No. 15).

This leaves as the sole unresolved motion Aero Union's January 13, 2012 Motion for Preliminary Injunction (ECF No. 11).   The Court DISMISSES that motion without prejudice.  First, Aero Union effectively has all the relief to which it is now entitled in the substitute bond that EADS-CASA filed with the Court. Second, with this Order, the parties will engage in limited discovery to determine whether the Court has jurisdiction over the Defendants.  The resolution of that question will affect the disposition of Aero Union's motion for preliminary injunction.  Finally, rather than have an orphaned motion cluttering the docket, the

Court has resolved it is preferable to dismiss it without prejudice until the threshold issues are sorted out.

## III.   CONCLUSION

The Court GRANTS Plaintiff Aero Union Corporation's Motion for Continued Sealing and Confidentiality Order (ECF No. 35) and APPROVES the Confidential Order attached as Exhibit A to this Order.  The Court further ORDERS that within thirty days of the date of this ORDER:

(1)   EADS-CASA review all prior filings by Aero Union and identify for Aero Union those portions that constitute confidential and proprietary information necessitating redaction;

(2)   EADS-CASA and Aero Union confer regarding any outstanding confidentiality issues; and

(3)   the parties file redacted versions of any documents currently under seal.

The Court GRANTS Plaintiff Aero Union Corporation's Motion for Limited Discovery (ECF No. 40).  Specifically, the Court ORDERS that Plaintiff Aero Union Corporation shall be allowed to conduct discovery regarding the following items:

(1)   The contract(s) and other documents related to the transfer of the Aircraft from the United States to COMAER under the "Brazilian Program" referenced in Paragraph 11 of Aero Union Corporation's Amended Verified Complaint, work on the Aircraft in the United States, payment of contractors including Aero Union Corporation, and exportation of the Aircraft;

(2)   The agreements, draft agreements, and written communications between CASA and COMAER related to the Aircraft;

(3)   The documents describing or relating to liens or wavier of liens with respect to the Aircraft; and

23

(4)    All documents relating to any alleged "use in military service" of the Aircraft on United States soil or in United States airspace by COMAER.

The Court further ORDERS Aero Union Corporation to file a status report thirty days from the date of this Order and every thirty days thereafter to apprise the Court as to the parties' compliance with this Order.

The Court DISMISSES without prejudice Aero Union Corporation's Motion for Preliminary Injunction (ECF No. 11).

Consistent with its Orders dated January 18, 2012 (ECF No. 24) and January 20, 2012 (ECF No. 32), the Court GRANTS European Aerospace Defence Space – Construcciones Aeronáuticas Sociedad Anónima's Motion of Defendant EADS-CASA (A) To Vacate the January 13, 2012 Order Because the Aircraft, Military Property of a Foreign State, Is Immune From Attachment Under the Foreign Sovereign Immunities Act, or, (B) in the Alternative, to Modify the January 13, 2012 Order in Part to Substitute a Bond to be Posted by EADS-CASA As Security for the Aircraft and to Dissolve the Temporary Restraining Order and Attachment (ECF No. 15).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of August, 2012

24